# EXHIBIT A

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | FOR THE NINTH JUDICIAL CIRCUIT |
| COUNTY OF CHARLESTON | ) | CASE NO. 2022-CP-10-_____ |

|  |  |
|---|---|
| John Doe 305, Julie McDonald, and | ) |
| Richard McDonald, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| Lawrence E. Richter, Jr., | ) |
| David K. Haller, | ) |
| Richter and Haller, LLC, and | ) |
| The Bishop of Charleston a corporation | ) |
| Sole, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## Summons

TO:    Lawrence E. Richter, Jr.
       David K. Haller
       Agent for Richter and Haller, LLC
       Agent for The Bishop of Charleston, a Corporation Sole

YOU ARE HEREBY SUMMONED and required to answer the complaint in this

action.  A file-stamped copy of the complaint is served upon you with this summons.

Your answer or other response to the complaint is to be served upon the attorney for the

plaintiff at 217 Lucas Street F-1, Mt. Pleasant SC 29464, or served by email at

attygm@gmail.com.

According to the South Carolina Rules of Civil Procedure, you are required to appear

and defend yourself in this action by making and serving an answer to this complaint within

thirty (30) days after the complaint is served upon you.  The thirty days begin to run from the

date after this summons and complaint are served upon you; the date the service is made is

excluded.

1

If within that time you fail to appear and defend as you are required to do by the Rules of Civil Procedure, the Plaintiff in this action shall apply to the Court for the relief demanded in this Complaint and judgment by default will be rendered against you for the relief demanded in the complaint.

Respectfully submitted,

Gregg Meyers, SC Bar No. 9908
217 Lucas Street Box 10
Mt. Pleasant SC 29464
843-321589
attygm@gmail.com

Attorney for the Plaintiff

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | FOR THE NINTH JUDICIAL CIRCUIT |
| COUNTY OF CHARLESTON | ) | CASE NO. 2022-CP-10-_____ |

|  |  |  |
|---|---|---|
| John Doe 305, Julie McDonald, and | ) | |
| Richard McDonald, | ) | Jury Trial Requested |
| | ) | |
| Plaintiffs, | ) | - Declaratory Relief |
| | ) | - Legal Malpractice |
| v. | ) | - Breach of Fiduciary Duty |
| | ) | - Aiding and Abetting Breach of that Duty |
| Lawrence E. Richter, Jr., | ) | - Civil Conspiracy, Conversion, |
| David K. Haller, | ) |   Accounting, Disgorgement |
| Richter and Haller, LLC, and | ) | - Breach of Contract |
| The Bishop of Charleston a corporation | ) | |
| Sole, | ) | |
| | ) | |
| Defendants. | ) | |

## Complaint

### Summary of the Action

1.    This action is brought by two actual class members and one putative class member who discovered only recently breaches of duty by class counsel that had been fraudulently concealed.

2.    An expert affidavit attached to this complaint as Attachment A supports the allegations of breach of professional duties and fiduciary duty. Its content is incorporated into this complaint pursuant to SCRCP 10(c).

3.    This action also seeks declaratory relief, pursuant to SCRCP 57 and S.C. Code § 15-53-10 et seq., to determine, among other things, under SCRCP 23 the propriety of each of the following actions of the defendants:

    a.  The conditions under which South Carolina Supreme Court orders may be
        ignored, with impunity, by both litigants and the circuit court bench,

3

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

b.  the extent to which class action settlements are permitted to be collusive,

c.  the extent to which colluding parties to a class action are permitted to judge-shop so as to move class settlement oversight and approval to a particular judge they desire,

d.  the extent to which class counsel is permitted to manipulate SCRCP 23 to serve the financial interests of class counsel at the expense of the class members class counsel purports to represent,

e.  the extent to which class counsel is permitted to manipulate SCRCP 23 to serve the financial interests of his colluding "adversary" at the expense of the class members class counsel purports to represent,

f.  the extent to which colluding litigants may misrepresent information provided to the court in the conduct of a class action,

g.  the extent to which colluding litigants may withhold material information from the court in the conduct of a class action,

h.  the extent to which class counsel may charge class members an unauthorized fee, and

i.  the extent to which applicable legal standards may vary according to the persons involved.

4.  The case arises from a collusive class action in which the class counsel defendants:

a.  colluded with their "adversary" to reach a class settlement;

b.  colluded with their "adversary" to judge-shop so as to move oversight and approval of that class settlement away from judges not desired to a particular judge in another circuit that was desired;

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

c. placed their own financial interests, and the interests of their "adversary," ahead of the interests of the class they purported to represent;

d. submitted (without objection) patently false information to the circuit court;

e. withheld from the circuit court (with cooperation of the "adversary") information that a contingency fee payment had been made that applied to nearly all of the time in records class counsel submitted in support of a fee request for work done on the class action;

f. charged individual class members a fee no order authorized them to charge; and

g. failed to make proper disclosures to class members about class counsel's conflicts and the fees already paid to class counsel before charging class members that unauthorized fee.

5. Those manipulations of SCRCP 23 have affected and continue to affect the rights and interests of sexual abuse victims perpetrated by priests and other employees of the Diocese of Charleston, as well as family members of those victims. Class counsel engaged in professional malpractice by placing their own interests above those of the class members they purported to represent, engaged in a substantial fraud upon the court, and did so with the full collusive cooperation of the Diocese of Charleston.

**Parties and Jurisdiction**

6. John Doe 305, Julie McDonald, and Richard McDonald are each a citizen and resident of a state other than South Carolina. Each was affected by actions taken by the defendants in Charleston and Dorchester Counties.

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

7.      Plaintiff John Doe 305 was born prior to August 30, 1980, one of the criteria for inclusion in what was called the "primary class" in the class settlement referred to below.

8.      As a minor child John Doe 305 was sexually abused by Eugene Condon, an agent or employee of the Diocese of Charleston, another criterion for inclusion in the "primary class" of the class settlement referred to below. He has had no prior claim as to that abuse resolved, the third, and last, criterion for inclusion in the "primary class," which had no geographic limit in its definition.

9.      The McDonalds learned about the class action and participated in the class action. Class counsel was aware the McDonalds resided in a state other than South Carolina when they participated in the class settlement. Within three years of this filing the McDonalds first learned of information class counsel fraudulently concealed from them before charging them a fee class counsel was not authorized by any order to charge.

10.     Until November 2019, John Doe 305 was never informed about the class action. According to class counsel, in 2007 class counsel accommodated the Bishop of Charleston in changing the nationwide notice originally proposed. That change eliminated any notice in the state where John Doe 305 resided. Class counsel fraudulently concealed that information from class members, including John Doe 305.

11.     The Bishop of Charleston, a Corporation Sole is an entity organized under the law of South Carolina, created by statute in 1880. The Corporation Sole is known colloquially as the Diocese of Charleston, and in this complaint it is referred to as "the Diocese." The Diocese operates under authority of its presiding Bishop or, if in between Bishops, it operates under authority of a person designated as "administrator." Each Bishop is appointed by the Pope presiding in Rome, Italy.

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

12.     Each member of the Diocese, including the Bishop, is required to comply with the laws of South Carolina and is subject to the court's enforcement authority and contempt power over the Diocese.

13.     The boundaries of the Diocese include and are consistent with the boundaries of the state of South Carolina. The Diocese holds property and does business in South Carolina. Its principal place of business is in Charleston County.

14.     Decisions to assign Eugene Condon to the church named Stella Maris, from which assignment he sexually abused John Doe 305, and decisions about how Eugene Condon should be supervised, were decisions made in Charleston County. The acts associated with the abuse of the plaintiff John Doe 305, as well as the negligent supervision of Eugene Condon, each took place in Charleston County.

15.     Decisions by the Diocese to participate in a class settlement for sexual abuse victims were decisions made in Charleston County but in some respects required approval of the Holy See, in Rome, Italy.

16.     Decisions by the Diocese about the manner of cooperating with class counsel, including the decisions alleged in this complaint to have been collusive, were decisions made in Charleston County.

17.     Lawrence E. Richter, Jr., is an attorney who at all times pertinent to this complaint conducted business in Charleston County.

18.     David K. Haller is an attorney who at all times pertinent to this complaint conducted business in Charleston County.

19.     Richter and Haller, LLC was an entity organized and existing under the laws of South Carolina which at all times pertinent to this complaint conducted business in Charleston

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

County. Richter and Haller individually worked for that entity during the time period involved with this complaint.

20.     At all times pertinent to this complaint, defendants Richter and Haller were agents for each other and for Richter and Haller, LLC. Each of them individually was designated class counsel as was Richter and Haller, LLC.  In this complaint, defendants Richter, Haller, and Richter & Haller, LLC are referred to collectively as "class counsel" unless otherwise particularly specified.

21.     Lawyers other than class counsel were involved on behalf of individual sexual abuse victims in certain of the cases included in the class action settlement. None of them was designated as class counsel. No claims in this action are made against the conduct of any of those lawyers, only against the class counsel defendants.

22.     The circuit court has jurisdiction of the subject matter and jurisdiction over the parties to this action.

### Nature of Wrongdoing

23.     According to time records of class counsel, work on one or more sexual abuse cases began July 21, 2003.

24.     In May 2005 defendants Richter and Haller and their firm brought a case in Charleston County against the Diocese for an individual designated as John Doe 66, a person who was sexually abused as a child.

25.     In August 2005 defendants Richter and Haller and their firm brought a case in Charleston County against the Diocese for an individual designated as John Doe 66A, a person who was sexually abused as a child.

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

26.    In October 2005 defendants met to discuss a class action settlement. The class settlement that the defendants would reach in 2006 was collusive, in that it would turn out to promote at the expense of the class members and have as its first priority the financial interests of class counsel, and as its second priority the financial interests of the Diocese, and as its third priority the financial interests of persons who objected to and opted out of the class, and as (at best) a fourth priority the financial and other interests of class members.

27.    No class action complaint was pending as of October 2005 when the defendants met to discuss a class settlement.

28.    At the October 2005 meeting the Bishop at that time expressed a willingness to consider a class action settlement.

29.    In December 2005 defendants Richter and Haller and their firm brought a class action case in Charleston County against the Diocese. The plaintiff was designated as John Doe 53, a person who was sexually abused as a child. Paragraph 34 of that complaint alleged that John Doe 53 brought the case "on behalf of himself and as a representative of a class of other persons similarly situated as victims of priest sex abuse in South Carolina pursuant to Rule 23 of the South Carolina Rules of Civil Procedure." Paragraph 36 of that complaint alleged that the number of sexual abuse victims "may exceed the hundreds."

30.    Between that December 2005 class action filing and June 2006, when a class settlement was reached, not a single motion was decided in the class action and not a single deposition was taken. No motion was filed to certify a class. The proceedings were not adversarial.

31.    In June, 2006 class counsel and the Diocese reached a class settlement during a mediation. Its outlines were embodied in a handwritten document.

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

32.     If not before, once the class settlement was reached the parties began to collude in their own financial interest.

33.     The 2006 mediated agreement included each of the three pending cases for, respectively, Johns Doe 66, 66A, and 53, and a fourth individual referred to as John Doe 67.

34.     After reaching the class settlement in 2006, the parties engaged in elaborate judge-shopping to move class settlement oversight and approval away from judges not desired in Charleston County to get to a desired judge who was then presiding in Dorchester County.

35.     That desired Dorchester County judge agreed to be shopped-for.

36.     Various acts of misconduct took place, some of which are discussed below, none of which was examined by the shopped-for circuit judge.

37.     To date, no final order was ever entered in the class action, apparently to evade appellate review of the class proceedings.

38.     In March 2009 in a related action the South Carolina Supreme Court ordered the class action to be concluded in six months, or by September 2009.

39.     That direct order of the South Carolina Supreme Court was inconsistent with the apparent agreement among the defendants to evade appellate review, so the defendants (and the shopped-for judge) all ignored the Supreme Court's order.  Nor was any extension of time sought from the Supreme Court, as its 2009 order required.

40.     Not later than 2013, the South Carolina Supreme Court was informed that its 2009 order had been ignored. To date the South Carolina Supreme Court has taken no action to compel its order to be enforced.

41.     Either this action will address the 2009 Supreme Court order having been ignored, or it will establish that there are some circumstances, or some litigants, or some

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

attorneys, or some circuit court judges, who are permitted to regard as optional direct orders of the South Carolina Supreme Court, in which case this action seeks to identify the criteria which govern when a given order of the South Carolina Supreme Court may be ignored, if that is the case.

42.     Additionally, this action seeks to determine whether ignoring the Rules of Civil Procedure, applicable precedent, and Supreme Court orders is an acceptable method for evading appellate review, and if so, under what criteria.

43.     During the course of the class action, class counsel placed their own financial interests, and the financial interests of the Diocese, and the financial interests of those who objected to and opted out of the class action ahead of the interests of the class members they purported to, and did, represent, as well as those absent class members to whom they owed a fiduciary duty. Their fiduciary duty was owed to absent class members both as a matter of law and, independently, because class counsel acknowledged on the record that they had assumed that duty.

44.     The Diocese colluded in class counsel's breach of duties to the plaintiffs.

45.     As one example of collusive conduct in the class action, the class was never informed that class counsel was, as class counsel put it, a "life-long active member of the Diocese" and that before and during the class action class counsel functioned "in many capacities" on behalf of the Diocese including positions categorized as "Extraordinary Minister," and had "friendships with many priests and bishops of the diocese," and whether those friendships included persons who had engaged in sexual abuse against potential members of the class or specific members of the class.

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

46.     As noted above, a second example of collusion in the class action was the overt judge-shopping after the class settlement was reached in June 2006. Ignoring requirements in SCRCP 23 that a class settlement be submitted for court approval and that no class action be dismissed without notice to the class and court approval, the defendants agreed to judge-shop.

47.     The objective of the judge-shopping was to avoid judges in Charleston County for class settlement review and approval and to have that done instead by a particular circuit judge from a different circuit who had long social and professional ties to class counsel.

48.     As noted above, when the class settlement was reached in June 2006 the only cases pending were in Charleston County, where the class action had been brought in 2005 and where the class settlement had been agreed to during a mediation.

49.     The colluding parties calculated, correctly as it turned out, that the particular circuit judge they desired was willing to be shopped-for and would facilitate the judge-shopping methods for moving the class settlement from Charleston County to Dorchester County.

50.     The South Carolina bench and bar will benefit from knowing whether and, if so, what criteria apply when, counsel may collude to (a) ignore the requirement in SCRCP 23 to seek court approval of a class settlement, (b) judge-shop so as to select a particular judge to oversee and approve a class settlement, (c) use judge-shopping as a means of transferring a class settlement from one circuit to another, (d) fail to notify all class members when the Charleston cases within the class settlement were dismissed as part of the judge-shopping, as SCRCP 23 requires, and (e) establish what length of time (in this case four months) and what procedural steps may be taken as the method for colluding parties to choose the judge to review a class settlement for approval.

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

51.    For a third example of collusion, as class counsel have explained on the record, class counsel disadvantaged members of the classes they defined and represented (such as John Doe 305) so they could accommodate a request from their "adversary," the Diocese. According to class counsel's representations to the court, class counsel agreed to alter the notice program for the class settlement after Bishop Baker (then presiding Bishop in the Diocese) complained that the original, nationwide notice program proposed (publication once a week for a six-week period in *USA Today*, in addition to publication in newspapers in and around South Carolina. Nationwide notice might have reached John Doe 305.

52.    But (according to class counsel) when class counsel's Bishop objected that notifying all putative class members was "too expensive," class counsel agreed to eliminate that nationwide notice, and to change the notice to that which had no chance of informing out of state residents such as John Doe 305.

53.    The scope of proposed notice was changed by agreement to publication in only newspapers in S.C. and Augusta.

54.    Class counsel thus intentionally deprived John Doe 305 and every other out of state class member of the information about the benefits of the class settlement, and did so, according to class counsel, to accommodate the financial interest of of his "adversary," the Diocese.

55.    That voluntary change by class counsel deprived John Doe 305 of any practicable chance of learning about the benefit of defenses waived as to class members, and was plainly less than the "best practicable notice" required by Due Process as it was notice even less than originally proposed by class counsel.

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

56.    For a fourth example of collusion among the defendants, in July 2007 the defendants appeared before the shopped-for circuit judge and represented on the record that the Diocese had agreed to extend the benefits of the class action to abuse victims who got no notice and who later made claims.

57.    Class counsel failed to secure that supposed agreement in any written order, breaching a duty to John Doe 305. But it reasonably explains why the shopped-for circuit judge made no inquiry about, and approved, the scope of the notice program being reduced from national notice to (essentially) notice in only South Carolina. It also explains why the shopped-for circuit judge further reduced the notice program from publication once a week for a six-week period to once a week for a three-week period. Both changes were approved by the court after the false representation in the July 2007 hearing about how the Diocese would treat absent class members who did not get notice.

58.    The Diocese does not treat absent class members who got no notice (such as John Doe 305) as represented to the shopped-for circuit judge in the July 2007 hearing.

59.    For a fifth example of collusion, no post-award fairness hearing under SCRCP 23 has yet been held in the class action, nor (as noted above) has any final order been entered in the class action. That refusal was and is apparently a tactic by the colluding parties to evade appellate review.

60.    A motion for a post-award fairness hearing was filed in 2016 by a class representative. That motion has been ignored.

61.    For class counsel, that tactic has evaded any review under SCRCP 23 of their *actual performance* in effectuating the class settlement, as opposed to making that assessment on hypothetical performance. Attorney fees were awarded without any review of collusive

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

conduct, or failures by class counsel such as not making proper conflict disclosures to the classes including the McDonalds, or failing to securing in a written order the relief claimed for persons such as John Doe 305, or charging improper fees to class members such as the McDonalds (a fee of 20%), or withholding material information about the fee from the McDonalds, or submitting fraudulent information to the court as part of the fee claim, or all defendants withholding from the court that nearly all time claimed in the class action to support the fee claim had already been paid for by a contingent fee paid by the Diocese to class counsel in November 2006.

62.     Conservatively estimated, it appears that the total of class counsel's unauthorized fees exceeds $900,000, of which the improper fees charged the McDonalds are a part. In addition, the $2.5 million fee awarded was based on substantial misrepresentations to the court. No accounting has ever been made of the actual fees charged and collected by class counsel.

63.     Class counsel's fiduciary obligation to each alleged class members and to each judicially approved class member is a duty either imposed under SCRCP 23 or assumed, or both, as class counsel acknowledged that fiduciary duty on the record.

64.     Under SCRCP 23 both class counsel and the court have a fiduciary obligation to protect the absent members of the class, an obligation unchanged by judge-shopping even if the circuit judge has agreed to be shopped-for by colluding parties to a class settlement, and even if all parties and a shopped-for judge has agreed to ignore their fiduciary obligation.

65.     If those duties of either counsel or the circuit judge are variable based on the persons involved, that criteria should be articulated for the benefit of South Carolina bench and bar.

15

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

66.    As a sixth example of the parties' collusion, between June 2006, when the mediated class settlement was reached and its handwritten outline laid out, and January 2007, when a typed version was submitted to the court for approval, two provisions were added to the agreement. Each served the financial interests of class counsel and the Diocese at the expense of class members.

67.    First, on page 13, in paragraph 6B, the attorneys' fees for class counsel were to be paid first, before any claims were made, class members identified, or any class member compensated, explicitly making the fees the highest priority of the class settlement. Awards to class members were subordinated to that fee.  Paragraph 6B provides:

> In the event that the total due [to class claimants] exceeds the amounts provided for … then each award shall be reduced on a *pro rata* [sic] of the net settlement fund.

68.    As this provision reflects, class counsel negotiated for themselves a fixed fee while simultaneously negotiating for the classes they claimed to represent a variable recovery that would be reduced *pro rata* if claims against the class fund were insufficient to pay the fee and all claims.  Class counsel's interest in an attorneys' fee was made the highest priority of the class settlement, explicitly placed above the recovery for class members.

69.    Second, on page 14, in paragraph 6C, the parties agreed that once all fees, costs, and claims were paid, then any remaining funds "will be returned to the defendants," meaning the Diocese.

70.    Through those two modifications, each of class counsel and the Diocese had a financial interest in limiting the number of class members who made claims.

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

71.    By an order of January 23, 2007 the shopped-for judge preliminarily approved these provisions "subject to the objection period and Fairness Hearing as set out in this order." (Page 1 of that order).

72.    A fairness hearing to complete the preliminary approval process was set for March 9, 2007,  (Page 8 of that order).

73.    "[N]otice of the settlement" was to be published once a week for the six weeks between January 23 and March 9, 2007. (Page 8 of that order). But the approved notice did not describe any monetary recovery for the class. Nor did the notice describe the attorneys' fee class counsel would seek at the March 9 hearing. Nor did it mention any of the conflicts of interest class counsel had as to claims for class members against his own Diocese. Nor did it mention any of the collusion associated with the class action.

74.    A copy of the settlement could be obtained by making a written request of class counsel. The order required class counsel to file their fee request by February 14 but made no provision for obtaining that request. Any objections to that request had to be filed eight days later, by February 22, before the notice period had run. Potential class members were given eight days to discover there was a class action, obtain by mail from class counsel information about the class action, discover that no information was provided about class counsel's fee request and make a separate request for that information, obtain that information, then prepare and file any written objections.

75.    The notice was designed to limit class members' ability to review the fee request.

76.    Because notice of the class settlement was not even attempted in the state where John Doe 305 lives, and because relief claimed to have been obtained for him was not included in any written order in the class action, John Doe 305 has lost the benefit of the defenses the

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

Diocese waived in the class settlement. As John Doe 305 was sexually abused by Eugene Condon in 1974 and 1975, before charitable immunity was abolished, class counsel have breached duties owed to John Doe 305 and have damaged him by depriving him of those waived defenses. Their performance fell below the standard of care.

77.    Class counsels' conduct also fell below the applicable standard of care as to the McDonalds: by charging unauthorized fees, by failing to make proper disclosures of conflicts, by failing to disclose fees already awarded, and (with cooperation of the Diocese), by submitting material false information to the court, fraudulently withholding material information from the court and withholding the same information from the McDonalds.

78.    Specifically, before each of the McDonalds was charged a 20% fee not authorized by any order, neither of them was told, among other things:

a.   that the class action was collusive,

b.   that no order authorized the fee class counsel charged for individual claimant recoveries,

c.   that class counsel had already been awarded a $2.5 million fee,

d.   that class counsel had been paid by the Diocese, but had not disclosed to the court, a contingency fee for individual cases of the class representatives. That was payment for nearly all of the time submitted in support of the court awarded fee,

e.   of class counsels' conflicts regarding the lifelong relationship with the Diocese and class counsels' functioning, even during the class action proceedings, as an official of the Diocese,

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

    f.   of class counsel's friendships with Diocese personnel, potentially including persons who engaged in sexual abuse,

    g.   that class counsel appeared at and participated in settlement discussions for persons who were not members of the class,

    h.   that persons who opted out of the class had received more favorable settlement terms than did class members,

    i.   that class counsel or his clients had contributed $100,000.00 to funding the more favorable settlement terms for those who had opted out, or

    j.   that with cooperation of the Diocese, class counsel had submitted blatantly false time and expense records to the court, which intentionally overstated time claims.

79.    In late 2019 each of the McDonald plaintiffs learned for the first time of the information that class counsel had not disclosed.

80.    As noted above, the McDonalds were each charged a 20% fee which no order authorized.

81.    The fee charged class members and non-class members without court authorization and without proper disclosure is, upon information and belief, conservatively estimated to have been in excess of $900,000.

82.    As a matter of law, class counsel and class representatives hold in constructive trust funds distributed to them I the class action. Under *Premium Investment Corp. v. Green*, 324 S.E.2d 72, 76 (S.C. App. 1984):

> If the class representative or class counsel breaches the fiduciary duties he assumes and receives and retains benefits flowing from the breach, he holds what he receives upon a constructive trust for the class.

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

83.     Discovery will ascertain and account for the amounts charged by class counsel without court authorization. Accounting records of the class action reflect a $2.5 million fee was paid to class counsel on September 4, 2007. No accounting record shows the separate contingent fee payment of $145,000 made to class counsel by the Diocese on November 20, 2006. A document prepared by class counsel described that payment as the "initial settlement disbursement." The check by which the payment was made appears at Attachment B.

84.     The January 2007 "Settlement and Arbitration Agreement" states that as to the claims of class representatives identified as Johns Doe 53, 66, 66A, 67, Janes Doe A and B, and Rachel Roe, "It is understood and agreed that the claims of these claimants are released and these settlement funds [identified for each claimant] will be paid by the Diocese regardless of whether the class certification and settlement are approved by the court." The class representatives had no interest in the settlement that applied to the class members.

85.     Nor does any accounting show the unauthorized fees charged the McDonalds and other class members.

86.     Class counsel also arranged, with cooperation of the Diocese, to be paid first, within ten days of the court's orders concluding the preliminary approval, before any class members had an opportunity to make a claim, and before the recovery to the class was known.

87.     Fiduciary obligations by class counsel toward each of the plaintiffs were imposed on class counsel as a matter of law, or were assumed, when class counsel (a) pled a class action in December 2005, (b) settled that class action in June 2006 with classes defined so as to include the plaintiffs, (c) sought, and obtained, class certification of those classes in 2007 (in a different county and different judicial circuit by a shopped-for circuit judge), (d) stated on the record they represented absent members of those defined classes, and (e) as to the

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

McDonalds, by actually representing them.

88.    This action has been brought within three years of John Doe 305 learning in November 2019 that class counsel had claimed they had obtained relief for even those absent class members who received no notice of the class action case, without actually securing in any written order that relief for John Doe 305, and within three years of learning that the Diocese defendants aided and abetted that breach of fiduciary duty towards him.

89.    Class counsel acknowledged that they had voluntarily assumed fiduciary duties towards absent members of the class such as the plaintiff Doe 305 in a March 9, 2007 hearing. In the transcript of that hearing at page 53, class counsel stated:

> we represent the interests of persons who might be here today, may not be here today, may not have made a claim yet, a class, punitive [sic, probably intended to be putative] class or actual class, punitive [sic] initially, now an actual class.

90.    Class counsel overtly acknowledged the fiduciary obligations they had assumed to the absent members (such as the plaintiff Doe 305) of the class they chose to define.

91.    As noted above, under the holding of *Premium Investment Corp. v. Green*, 324 S.E.2d 72, 76 (S.C. App. 1984), by operation of law any benefits from the class action are held by class counsel in trust for the class, including its absent members.  Those benefits held in trust should be used to benefit the Plaintiff Doe 305, and to reimburse the McDonalds.

92.    Also a matter of law, under *Tilley v. Pacesetter Corp.*, 585 S.E.2d 292, 302 (S.C. 2003), the class definitions chosen by class counsel which included the plaintiffs was "a strategy choice" class counsel elected, the implications of which presented duties imposed by law and which class counsel voluntarily assumed, and by which class counsel are bound.

93.    To gain court approval of the class settlement, the defendants made overtly false representations of fact to the shopped-for circuit judge, particularly in a hearing held July 13,

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

2007. The transcript for that hearing is unusual in that it has confusing page numbering, with multiple page numbers on each page. Using the numbers that correspond to a 33-page hearing transcript, among those false representations was that there was an "understanding" (on page 3) among all defendants in this action "as to what would happen" to any person within the class definition who "shows up" (as put by the Diocese defendants) outside of the class claim procedure. That "understanding" communicated to the shopped-for judge was never placed in any written order.

94.     The discussion began concerning a specific group of individuals (called the "actual notice" group), a group of individuals who, according to files of the Diocese, had previously reported their abuse to the Diocese. Four (hearing page 8) or five (hearing pages 4 and 5) of "those particular folks" had not been located. The Diocese represented, without objection by class counsel (at page 3, emphasis added):

> I think we [the Diocese and class counsel] have an understanding as to what would happen ***to those particular folks***, which would really be our problem, and I think that what we've discussed allows us to proceed with the agreement we've signed on January 12th [2007]. And then ***if that person shows up*** then we [the Diocese] would have to deal with that.

95.     Then the discussion broadened to include all absent class members who got no notice. At page 12, counsel for the Diocese stated:

> Judge, I view that responsibility as ongoing and so that we got to find the other four ***and we've got to find anybody else*** who has kind of, lack of a better word, comes out of the woodwork.

96.     Class counsel, on page 14 of that same July 13, 2007 transcript, summarized to the court (emphasis added), that:

> what the Diocese has come to is that if ***anybody*** is missed . . . the diocese ***waives all the same defenses*** that they have given up in this class settlement, consents to the same method of compensation, consents to the same early disposition of that claim by a same arbitration method, the whole nine yards.

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

97.     When the shopped-for judge confirmed the representation by repeating back to counsel, on page 22 of that same transcript, the court stated, emphasis added:

> ***There is nothing more that the diocese could possibly do*** that I am aware of. I mean, at this point in time when the diocese obligates itself to do as it has been described, ***there is nothing more that they can possibly do as far as I can even imagine***, Mr. Shahid, truly. I mean, what they say is ***if you come forward in the future we will treat you just the same*** as we have treated these individuals and the relief is available for you. ***I know of nothing more that could be done***. So I certainly would approve that.

It is a tautology that the only way there was "nothing more" that could be done, particularly after the scope of notice had been reduced, was if all absent class members who got no notice would get the same class settlement benefits. Yet no written order secured that relief for persons such as John Doe 305, a breach of duty by class counsel to absent members of the class that can be mitigated only by enforcing the agreement pursuant to SCRCP 43(k) as to John Doe 305 and any other absent class member who got not notice.

98.     To get a reduced scope of notice approved, the defendants intended in that July 13, 2007 hearing to create the false impression with the shopped-for judge that if a victim within the class definition came forward after the class claims period was concluded, that the Diocese would extend the same class relief to that victim.  The discussion started in the context of the four or five unknown "actual notice" victims discussed at the beginning of the hearing, but the assurances to the court broadened so as to include all absent class members.

99.     In making the false representation that they made no effort to embody in any court order, class counsel were operating in the interest of themselves and in the interest of the Diocese defendants, rather than in the interest of the absent members of the class such as John Doe 305, to whom class counsel owed, or had assumed, a fiduciary duty. Class counsel intended that the shopped-for judge would rely on the statement, and the shopped-for judge did

23

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

rely on the statement. However, when the shopped-for judge did not embody the "understanding" in any written order, none of the defendants requested that the shopped-for judge do so. That fell below the standard of care for class counsel, as aided and abetted by the Diocese.

100. Class counsel had alleged in Paragraph 36 of the John Doe 53 class action complaint filed in Charleston County on December 2, 2005, that the number of abuse victims "may exceed the hundreds." In originally proposing nationwide notice, counsel were aware or should have been aware that many persons sexually abused in South Carolina had likely moved out of South Carolina and resided out of state.

101. Class counsel were aware, as they had alleged for the class that they and John Doe 53 represented, that the number of sexual abuse victims far exceeded the victims already known from the files of the Diocese. Class counsel were aware the Diocese had a history of concealing sexual abuse yet relied on the Diocese to search their own files for abuse victims. Class counsel were also aware that some abuse victims repressed memories of their childhood sexual abuse (or were incapacitated as a matter of law) and could reasonably be expected not to recall childhood abuse for various lengths of time or were unable to pursue their claims for other reasons.

102. In short, the "Primary class" of sexual abuse victims was known by class counsel, or should have been known by class counsel, to be large and to require widespread notice. The defendants deliberately misrepresented to the shopped-for judge that absent class members later disclosed would receive relief, when in fact those absent members would get no relief unless the agreement placed on the record in open court is enforced through this action.

24

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

The defendants have opposed relief for absent class members who got no notice and at present continue to oppose relief for absent class members who got no notice.

103.    As to John Doe 305, these actions and inactions by class counsel constituted breach of fiduciary duty imposed by law or assumed. As to the Diocese, the conduct constitutes aiding and abetting that breach of fiduciary duty by class counsel as to John Doe 305.

104.    Page 4 of the July 30, 2007 order certifying the class states, "Class Counsel has stated to the Court that it believes the representations and stipulation of the Diocese for potential absent class members is in the best interest of the absent class members." In 2007 the defendants were aware that the written orders failed to require nationwide notice (as they have cooperated to omit that notice after it was originally proposed) and failed to secure the full relief for absent class members that had been made in those "representations and stipulations of the Diocese."

105.    The result of class counsels' failure, which the Diocese aided and abetted, was to exclude John Doe 305 from any recovery for his sexual abuse and to deprive him of the benefit of the defenses that were waived in the class action settlement. Rather than protect the absent class members to whom they had assumed, and the law imposed, fiduciary duties, class counsel protected the interest of the Diocese defendants and class counsels' own interest in their fee.

106.    For the Diocese the benefit of the class action was its potential preclusive effect, the secondary objective class counsel sought for his Bishop and his Diocese, after class counsel's primary objective in their fee. As explicitly stated in the class settlement agreement, and as noted above, class counsels' fee was the highest priority of the class action settlement. The fee was fixed, and compelled a *pro rata* reduction of recovery to class members if "too many" abuse victims made claims. Failing to secure relief for absent class members who got no

25

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

notice served the purpose of avoiding having to implement the fee provision that compelled a *pro rata* reduction.

107.    Correspondingly, not having "too many" class claimants also served the financial interest of the Diocese in that a reduced number of class claimants increased the chances that a residual class fund would remain after claims made and would be returned to the Diocese.

108.    The Diocese defendants took various actions in concert so as to aid and abet class counsels' breach of fiduciary duty to absent members of the class. Among those actions were:

    a.   Shopping for a judge and doing so by collaborating to file, and accept service of, a duplicate class action complaint for John Doe 53 and other illicit means of evading SCRCP 23;

    b.   Making no objection to the complex case designation, even though the Supreme Court's July 26, 2006 complex case order applied to cases that could not be settled and the class settlement had already been reached;

    c.   Misrepresenting to the court that absent class members who got no notice would receive the same compensation as class members;

    d.   Taking no position on whether the class should be certified;

    e.   Acquiescing in class counsel failing to disclose to the class his life-long ties to and functions on behalf of the Diocese;

    f.   Making no disclosure to the class of the superior settlement terms (compared to those for the class) for the individuals who were the class representatives,

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

and whose settlement terms would apply (a) whether or not the class was approved, and (b) for fixed sums not dependent on an arbitration process;

g.  Making no disclosure to the court of the November 20, 2006 contingent fee payment to class counsel for individual cases of class representatives, or that the billing records relied on for the class action fee application was almost entirely (from 2003 through November 20, 2006) for time for which that contingency fee had already compensated class counsel;

h.  Making no objection that the class representatives referred to in the 2006 version of the class settlement agreement had already been paid and whose claims were already settled in 2006 whether or not the class was later certified;

i.  Making no objection that the claims of class representatives referred to in the 2007 version of the class settlement agreement had already been paid and their claims released whether or not the class was later certified, meaning the "class representatives" had no stake in the class settlement, and were not representative of either class;

j.  Not disclosing to the class the superior settlement terms reached with the individuals who objected to the class settlement;

k.  Not disclosing to the class that those superior settlement terms for objectors were funded in part by class counsel or class members paying $100,000 from class counsel's trust account;

27

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

l.   Not objecting when class counsel negotiated simultaneously a fixed fee for themselves and a variable recovery for the class, with the compensation for class members being subordinated to that fee;

m.   stating only the weakest and most vague arguments that the fee awarded should be the low end of the agreed fee range, saying nothing about the blatantly fraudulent time records of class counsel, not disclosing that a contingent fee had already been paid for the time spent on individual cases which formed the vast percentage of time claimed in the fee application (time from 2003 to November 20, 2006), and not disclosing that the class settlement was reached seven months after filing without a single motion having been argued or decided, or a single witness having been deposed;

n.   agreeing that no accounting records of the class fund should include the contingency fee payment to class counsel;

o.   agreeing to the fee being awarded before any member of the class member was even identified, had even submitted a claim, or had been compensated;

p.   Agreeing to ignore the South Carolina Supreme Court's March 2009 directive that the class action should be concluded in six months unless an extension was sought from that court;

q.   agreeing to seek no post-award fairness hearing under SCRCP 23 where the *actual* conduct of the class action, substantively and procedurally, and the *actual* recovery for the class members would be assessed;

r.   ignoring a 2016 motion by one of the class representatives for a post-award fairness hearing; that motion alleged that class counsel had "abandoned" the

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

class representative and the representation had terminated, and

    s.   seeking no final order in the class action so as to avoid all appellate review.

109.   The defendants caused John Doe 305 special harm in the form of precluding him from making any claim against the Diocese for his sexual abuse, specifically changing the notice to deny him all chance to enjoy the benefits of a waived defense of statute of limitations and a waived defense of charitable immunity. The professional representation of the plaintiff by class counsel was inadequate and failed to meet the standard of care applicable to South Carolina attorneys, and was a breach aided and abetted by the Diocese.

110.   The defendants caused the McDonald plaintiffs special harm in the form of a 20% fee which no order authorized, and without proper disclosures as alleged above, proper disclosures having been fraudulently concealed from them. The Diocese aided and abetted that breach by ignoring the Supreme Court's 2009 order and agreeing to omit any judicial review of class counsel's actual conduct.

<div align="center">

**For a First Cause of Action:**
**Declaratory Relief**

</div>

111.   Allegations above are incorporate into this cause of action as if fully stated.

112.   This action seeks declaratory relief, pursuant to SCRCP 57 and S.C. Code § 15-53-10 et seq., to determine, among other things, under SCRCP 23:

    a.   The conditions under which South Carolina Supreme Court orders may be ignored, with impunity, by both litigants and the circuit court bench,

    b.   the extent to which class action settlements are permitted to be collusive,

    c.   the extent to which colluding parties are permitted to judge-shop so as to move class settlement oversight and approval to a particular judge they desire,

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

d.  the extent to which class counsel is permitted to manipulate SCRCP 23 to serve the financial interests of class counsel at the expense of the class members class counsel purports to represent,

e.  the extent to which class counsel is permitted to manipulate SCRCP 23 to serve the financial interests of his "adversary" the Diocese at the expense of the class members class counsel purports to represent,

f.  the extent to which colluding litigants may misrepresent information provided to the court in the conduct of a class action,

g.  the extent to which colluding litigants may withhold material information from the court in the conduct of a class action,

h.  the extent to which class counsel may charge an unauthorized fee to class members, and

i.  the extent to which applicable legal standards vary according to the persons involved.

113.  Declaratory relief is requested, as described above as well as described below in the "relief sought."

<div align="center">

**For a Second Cause of Action:**
**Professional Negligence by Class Counsel**
**Breach of Fiduciary Duty, Imposed or Assumed**

</div>

114.  Allegations above, other than the allegations of intentional conduct by class counsel, are incorporated into this cause of action as if fully stated.

115.  Pursuant to S.C. Code § 15-36-100(b), Attachment A to this complaint, and incorporated herein pursuant to SCRCP 10(c), is an affidavit of Michael Virzi specifying certain various negligent acts or omissions of class counsel, and the factual basis of the

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

negligent acts or omissions of class counsel. That affidavit was prepared for the Supreme Court as part of a petition for original jurisdiction and bears a Supreme Court caption.

116.    Class counsel assumed, or by law had imposed, fiduciary duties to John Doe 305, as alleged above and as set forth in Mr. Virzi's affidavit.

117.    Unless the agreement placed on the record by class counsel and the Diocese is fully enforced pursuant to SCRCP 43(k) to fully benefit John Doe 305, and to the extent not fully enforced, class counsel breached those duties to him, as alleged above. They eliminated any chance of John Doe 305 getting notice and failed to secure in a written order relief claimed to have been obtained, depriving him of the waived defenses available only in the class action and the relief available to him in the class action.

118.    As to John Doe 305, class counsel were professionally negligent, and the Diocese defendants aided and abetted that breach of fiduciary duty, which damaged John Doe 305.

119.    As to each of the McDonald plaintiffs, class counsel were professionally negligent in charging each of the McDonalds a fee which no order authorized, without proper disclosures, and in avoiding court review of class counsel's actual performance and actual charges to class members, as alleged above.

120.    The Diocese aided and abetted the breach of duty by class counsel, as alleged above. They cooperated to conceal payments made to class counsel. They cooperated in having no accurate accounting of class funds and charges made by class counsel. They collaborated in misrepresentations to the court and in withholding pertinent information from the court. And they cooperated to ignore the Supreme Court, ignore a motion for a post-award fairness hearing

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

and agreed to seek no final order in the class action so as to keep class counsel's actual performance and actual charges to class members from being reviewed.

121.    Each of the plaintiffs is entitled to actual and punitive damages against class counsel as a result of the breaches of fiduciary duty and professionally negligent representation by class counsel.

**For a Third Cause of Action:**
**Aiding and Abetting Breach of Fiduciary Duty**
**Against the Diocese defendants**

122.    Allegations above are incorporated into this cause of action as if fully stated.

123.    The Diocese aided and abetted the breaches of fiduciary duty by class counsel towards each of the plaintiffs, as set forth above.

124.    The Diocese defendants joined with class counsel in eliminating nationwide notice of the class settlement while also making false representations on the record to the shopped-for judge, supposedly protecting the interest of absent class members such as John Doe 305 that he would be afforded relief once he learned of the class action. Each defendant then failed to secure those representations in any written order.

125.    As to the McDonalds, the Diocese aided and abetted class counsel's breaches of duty by, among other things, cooperating to ignore the 2009 Supreme Court order and the 2016 motion by a class representative, to seek no final order, to require no full accounting of the class funds and class counsel's actual performance and actual fees charges, and in concealing from the court the contingent fee payment made to class counsel for the class representatives.

126.    The Diocese defendants knowingly participated in the breach of the fiduciary duties owed by class counsel to each of the plaintiffs because it was in the financial interest of the Diocese to do so. The Diocese took advantage of class counsels' willingness to prioritize over

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

the interests of abuse victims in the classes they chose to define both their own interest in an attorneys' fee and the interests of class counsel's own Bishop and Diocese.

127.    The plaintiffs have each been damaged by the Diocese defendants aiding and abetting class counsels' breaches, and each plaintiff is entitled to actual and punitive damages as a result.

**For a Fourth Cause of Action:**
**Civil Conspiracy, Conversion, Accounting, Disgorgement**
**Against all defendants**

128.    Allegations above are incorporated into this cause of action as if fully stated.

129.    The defendants joined together in common action for the purpose of injuring the plaintiffs.  The defendants collaborated in a collusive class action, judge-shopped for review of the class settlement, and agreed to a class settlement which prioritized the defendants' financial interests at the expense of class members. The defendants submitted false information to the court and withheld material information from the court.

130.    As to John Doe 305, the defendants collaborated in reducing the notice program so as to deprive him of notice so he and all other class member who resided out of state could not participate in the waived defenses available in the class action or the relief available in the class action.

131.    As to the McDonalds, the defendants collaborated in withholding material information from the court and the class members, submitting false information to the court, ignoring the 2009 order of the Supreme Court, ignoring the class representative's 2016 motion, seeking no final order in the class action and in making no proper accounting of the class settlement funds.

132.    The defendants caused the plaintiffs special damage. John Doe 305 is required to

confront defenses otherwise waived, and the McDonalds were each charged a fee without authorization and without proper disclosures, which properly concluding the class action settlement by a post-award fairness hearing would disclose.

133.    The common design among the defendants was to maximize their own financial interests, even at the expense of the persons in the classes, and regardless of the injuries done to the plaintiffs to whom they owed a fiduciary duty.

134.    Class counsel made affirmative misrepresentations to the court and to class members, and wrongfully appropriated what is conservatively estimated to exceed $900,000 from the class members, without regard to the improperly awarded fee. The Diocese collaborated in that process. Each collaborated to exclude eligible sexual abuse victims from making claims, class counsel acting so as to protect the Diocese at the expense of their class claimants. Funds for class members have been improperly drawn from the class fund and converted by class counsel to their own use.

135.    The plaintiffs are entitled to actual and punitive damages against the defendants for the civil conspiracy; as well as an accounting of improper charges to class members and disgorgement of all funds improperly converted by class counsel.

### For a Fifth Cause of Action: Breach of Contract
### Against the Diocese Defendants for John Doe 305

136.    Allegations above are incorporated into this cause of action as if fully set forth.

137.    Class counsel and counsel for the Diocese placed on the record an agreement between them to provide relief to absent class members who failed to get notice within the claims period.

138.    At that time class counsel had pleaded a class action whose definition included John Doe 305. He was an intended beneficiary of that agreement with the Diocese.

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

139.    The essential terms of that agreement are reflected in the class settlement agreement, modified by the representation on the record that any absent class member who got no notice would, once they identified themselves, get the same terms of relief as class members who received notice.

140.    As alleged above, class counsel was professionally negligent in failing to secure that relief for the class in the form of a written order, but the agreement was "made in open court and noted upon the record," as required by SCRCP 43(k).

141.    The Diocese has breached that agreement in not providing the agreed upon relief to John Doe 305 and all other absent class members.

142.    John Doe 305 is entitled to the relief provided by the agreement entered on the record in open court of which he is an intended third-party beneficiary.

**Demand for Jury Trial**

143.    Plaintiffs demand a trial by jury.

**Relief Sought**

The plaintiffs seek the following relief:

144.    For the court to declare the rights and obligations of the plaintiffs under SCRCP 23 and 57, as authorized by the Uniform Declaratory Judgments Act, S.C. Code §§ 15-53-10 et seq. to declare the "rights, status and other legal relations," as put in S.C. Code § 15-53-20, and to construe "other writings constituting a contract," as put in S.C. Code § 15-53-30, in the following respects under SCRCP 23:

   a.   Is it proper for parties to reach a class settlement then collude to bypass SCRCP 23 approvals and judge-shop for purposes of moving a settled class action to another county for purposes of class settlement approval and oversight, thereby avoiding judges not desired and selecting a desired judge?

   b.   Is it proper for the judge-shopping tactics to include (a) filing new class

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

action cases, (b) replicating in another circuit an existing and settled class action complaint and (c) accepting service of such new complaints?

c. Is it proper for class counsel to refuse to notify class members of their substantial conflicts of interest?

d. Is it proper for class counsel to enter an agreement to settle a class action which simultaneously, and explicitly, creates a fixed fee for class counsel, elevates that fee for class counsel above the interests of class members and makes class recovery subordinate *pro rata* to counsel's fixed fee?

e. Does it breach class counsel's fiduciary duty to absent class members to accommodate an objection by his "adversary" to eliminate notice for all class members who reside out of state without providing relief to out of state class members?

f. Is it proper for class counsel to have received a payment to resolve the claims of class representatives, and payment for a fee for that work, without any parties disclosing that fee payment to class members or to the court?

g. Must a reviewing court examine time records submitted by class counsel in support of a fee award and reject, or at least inquire about, blatantly fraudulent submissions?

h. Is it proper for class counsel and the Diocese fail to disclose that nearly all of the time submitted by class counsel in support of a fee award (all time between 2003 and November 20, 2006) had been paid for by a prior payment of $145,000?

i. Does class counsel breach their fiduciary duty to class members by charging a fee not authorized by any court order?

j. To what extent does class counsel breach their fiduciary duty to class members by failing to disclose each of (a) substantial conflicts of interest with the Diocese and the shopped-for judge, (b) collusion in the class action, (c) the judge-shopping, (d) that no order authorized the fee charged the class member, (e) that a $145,000 fee payment had already been made to class counsel, (f) that a $2.5 million fee payment had already been made to class counsel, (g) that objectors to the class settlement got better settlement terms than class members, (h) that class counsel participated in discussions to obtain better settlement terms for objectors, and (i) that class counsel paid $100,000 from his trust account to partially fund better settlement terms for objectors?

k. Does class counsel breach their fiduciary duty to absent class members when they fail to secure in a written order the relief and waived defenses stated on

the record to have been obtained for absent class members who got no notice?

l.   Should class counsel be required to disgorge to benefit the class members all improperly charged fees, including the $2.5 million award and the unauthorized fee charged all class members?

145.   Actual and punitive damages as provided by law,

146.   An accounting of sums charged to class members such as the McDonalds without proper authorization and without proper disclosures, and of the residual class funds refunded to the Diocese,

147.   Disgorgement for the benefit of the class of sums improperly charged each class member by class counsel, of the class funds refunded to the Diocese, and of all fees paid to class counsel based on misrepresentations and fraudulently withheld information;

148.   Costs and disbursements of this action as provided in S.C. Code § 15-53-110;

149.   Reasonable attorney fees; and for

150.   Such other and further relief as the Court deems just and proper.

Respectfully submitted,

Gregg Meyers, SC Bar No. 9908
217 Lucas Street Unit F-1
Mt. Pleasant SC 29464
843-324-1589
attygm@gmail.com

Attorney for the Plaintiffs

August 29, 2022

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

# State of South Carolina

# In The Original Jurisdiction Of The Supreme Court

Case No. 2020_____

John Doe 305, Julie McDonald, and Richard McDonald,

Petitioners - Plaintiffs,

v.

The Bishop of Charleston, a Corporation Sole; Robert Guglielmone,
The Bishop of Charleston, in his official capacity; Lawrence E. Richter, Jr.,
David K. Haller, and Richter and Haller, LLC,

Respondents - Defendants

## Affidavit of Michael J. Virzi

NOW COMES Michael J. Virzi, and states, under oath, the following:

1.      I am offering this affidavit, pursuant to S.C. Code Ann. § 15-36-100(b), as an expert

witness on behalf of Plaintiffs to support their Complaint against Defendants Lawrence E. Richter,

Jr., David K. Haller, and Richter and Haller, LLC, (hereinafter "Class Counsel") for professional

negligence.

2.      My qualifications to give expert testimony include the following:

   A.      I am a lawyer licensed to practice law in South Carolina, and my practice
           for the past seventeen years has focused exclusively on matters of legal
           malpractice, ethics, and lawyer discipline;

   B.      I am a former Assistant Disciplinary Counsel to the South Carolina
           Supreme Court, I serve on the South Carolina Bar's Ethics Advisory and
           Professional Responsibility Committees, I served a three-year term as Chair
           of the former from 2007 to 2010 and a two-year term as chair of the latter



1

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

from 2018-2020, and I serve as Ethics Chair for the South Carolina Association for Justice;

C.    I have provided expert testimony on matters involving lawyer ethics and malpractice on more than 100 occasions either in court, in deposition, or by affidavit;

D.    I teach Professional Responsibility at the University of South Carolina School of Law and have taught Fundamentals of Law Practice and Professionalism; I am a frequent CLE speaker and law school guest lecturer on the topics of lawyer malpractice, ethics, and lawyer discipline; I am an instructor for the South Carolina Bar and Supreme Court's ongoing Legal Ethics and Practice Program; and I have authored five published articles, numerous adopted Ethics Advisory Opinions, and a book chapter on matters involving lawyer ethics and malpractice;

E.    I am a member of the South Carolina Association of Ethics Counsel, the Association of Professional Responsibility Lawyers, and the ABA Center for Professional Responsibility; and

F.    I am familiar with the standard of care applicable to lawyers in the circumstances involved in this matter.

3.    My opinion is based on review of the following documents:

A.    Petition for Original Jurisdiction in the above-captioned case;

B.    Complaint in the above-captioned case;

C.    Complaint, dated May 10, 2005, and filed May 12, 2005, in John Doe #66 v. The Bishop of Charleston et al., Case No. 05-CP-10-2053;

D.    Complaint, dated August 10, 2005, and filed August 12, 2005, in John Doe #66A v. The Bishop of Charleston et al., Case No. 05-CP-10-3293;

E.    Complaint, dated December 1, 2005, and filed December 2, 2005, in John Doe #53 et al. v. The Bishop of Charleston et al., Case No. 05-CP-10-4913;

F.    Amended Complaint, dated October 6, 2006, and filed October 6, 2006, in John Doe #67 et al. v. The Bishop of Charleston, Case No. 06-CP-18-1311;

G.    Motion to Certify Classes and for Preliminary Approval of Class Settlement, dated October 6, 2006, and filed October 6, 2006, in John Doe #53 et al. v. The Bishop of Charleston et al., Case No. 2006-CP-18-1310, 2006-CP-18-1311, and 2006-CP-18-1636 (collectively hereinafter "the Consolidated Class Actions");



ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

H.  Consent Order of Dismissal Without Prejudice, dated October 19, 2006, and filed October 23, 2006, in John Doe #66 v. The Bishop of Charleston et al., Case No. 05-CP-10-2053;

I.  Consent Order of Dismissal Without Prejudice, dated October 19, 2006, and filed October 23, 2006, in John Doe #66A v. The Bishop of Charleston et al., Case No. 05-CP-10-3293;

J.  Consent Order of Dismissal Without Prejudice, dated October 19, 2006, and filed October 23, 2006, in John Doe #53 et al. v. The Bishop of Charleston et al., Case No. 05-CP-10-4913;

K.  November 7, 2006, letter from A. Peter Shahid, Jr., to Lawrence E. Richter, Jr., regarding the Consolidated Class Actions;

L.  November 10, 2006, letter from Lawrence E. Richter, Jr., to Albert P. Shahid, Jr., regarding the Consolidated Class Actions;

M.  Settlement and Arbitration Agreement, dated January 12, 2007, and filed January 17, 2007 in the Consolidated Class Actions;

N.  Motion to Certify Classes and for Preliminary Approval of Class Settlement, dated January 15, 2007, and filed January 17, 2007, in the Consolidated Class Actions;

O.  Plaintiff's Petition for An Award of Attorneys Fees and Litigation Costs, dated February 14, 2007, and filed February 14, 2007, in the Consolidated Class Actions with exhibits, including:

    i.  Affidavit of Lawrence E. Richter, Jr. in Support of Plaintiffs' Petition for Attorneys Fees and Costs, with attached timesheets and expense summaries;

    ii.  Affidavit of David K. Haller in Support of Plaintiffs' Claim for Attorneys Fees and Costs;

    iii.  Affidavit of Angela Pittard, with attached timesheets;

    iv.  Affidavit of John P. Freeman in Support of Class Action Settlement Approval and Class Counsel's Fee Petition, with attached resume and Comparative Table of Selected Settlements; and

    v.  Affidavit of Lionel S. Lofton in Support of Plaintiff's Petition for Attorneys Fees and Costs, with attached timesheets.



3

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

P.    July 12, 2007, letter from Lawrence E. Richter, Jr., to The Honorable Diane S. Goodstein regarding the Consolidated Class Actions;

Q.    Transcript of July 13, 2007, hearing before The Honorable Diane S. Goodstein;

R.    Transcript of Record before The Honorable Diane S. Goodstein, dated August 9, 2007, in the Consolidated Class Actions;

S.    Order Approving Settlement, dated and filed July 30, 2007, in the Consolidated Class Actions;

T.    Order of the Court, dated and filed August 31, 2007, in the Consolidated Class Actions;

U.    February 19, 2008, letter from Lawrence E. Richter, Jr., to Richard McDonald regarding "John Doe 538 vs. The Diocese of Charleston, et al." and enclosing a Settlement Statement;

V.    Order of the Supreme Court of South Carolina, dated March 19, 2009, in John Doe v. Lawrence E. Richter, Jr., et al.;

W.    Order Denying in Part and Granting in Part Defendants' Motion to Dismiss, dated June 17, 2011, and filed June 27, 2011, in John Doe 2 and Jane Doe 4 vs. The Bishop of Charleston, et al., Case No. 10-CP-10-5520;

X.    Notice of Motion and Motion to Enforce Settlement, dated April 16, 2012, in the Consolidated Class Actions;

Y.    Transcript of Record before The Honorable Edgar W. Dickson, dated April 12, 2013, in the Consolidated Class Actions;

Z.    Order on Motion to Enforce Settlement, dated November 21, 2013, and filed on December 17, 2013, in the Consolidated Class Actions;

AA.    Transcript of Motions Hearing before The Honorable J.C. Nicholson, Jr., dated April 10, 2014, in Father Doe 194 vs. Bishop of Charleston, et al.;

BB.    Motion for Post-Award Fairness Hearing by Allen Sires, dated and filed on May 11, 2016, in 2006-CP-18-1310 and 2006-CP-18-1311;

CC.    Affidavit of Lawrence E. Richter, Jr., dated March 31, 2015, in John Doe 2 and Jane Doe 4, et al., vs. The Bishop of Charleston, et al., Case Nos. 2010-CP-10-5520, 2010-CP-10-7233, 2012-CP-10-5559, 2013-CP-10-3733, 2013-CP-10-4175, and 2013-CP-10-4176;



ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

DD.    Order on Lawyer Defendants' Motion for Summary Judgment, dated August 8, 2017, and filed August 11, 2017, in John Doe 2 and Jane Doe 4, et al., vs. The Bishop of Charleston, et al., Case Nos. 2010-CP-10-5520, 2010-CP-10-7233, 2012-CP-10-5559, 2013-CP-10-3733, 2013-CP-10-4175, and 2013-CP-10-4176

4.    These factual and legal materials are of the type reasonably relied upon by experts in the field of legal malpractice in forming their opinions.

5.    Based on my experience, education, training, and knowledge of the standard of care for lawyers, and on my review of the above-listed documents, it is my opinion that Class Counsel engaged in negligent acts and omissions in their representation of Plaintiffs and that Class Counsel's conduct fell below the standard of care.

6.    It appears from the above-referenced documents that Class Counsel represented classes of persons of which Plaintiffs were members in class action litigation beginning in 2005. The "primary class" included all individuals of a certain age "who, as minors, were sexually abused at any time by agents or employees of the Diocese of Charleston," a group that apparently included Plaintiff John Doe 305. The "consortium class" included spouses, parents, and guardians of individuals who met the primary class definition, a group that apparently included Plaintiffs Julie McDonald and Richard McDonald (hereinafter "the McDonald Plaintiffs"). Prior to class certification, Class Counsel had a duty to act in the best interest of the putative classes as a whole, which included Plaintiffs. It further appears that Class Counsel later undertook to individually represent Plaintiffs Julie McDonald and Richard McDonald as their counsel in pursuing their individual claims, thereby undertaking additional fiduciary duties of competence, diligence, loyalty, and communication.

7.    It appears Class Counsel failed to protect the rights and interests of Plaintiffs in several ways, breaching duties owed to them. In particular, it appears that Class Counsel failed to



ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

inform the classes or Plaintiffs of Defendant Richter's extensive personal relationship with the primary adverse party, the Diocese of Charleston, and Defendant Richter's continuing work on behalf of the Diocese during the litigation in which the classes were adverse to the Diocese.  It is apparent from Richter's own affidavit (identified in paragraph 3.O.i above) that he has a lifelong, extensive personal relationship with the Diocese and many of its then-current and former constituents, in addition to being a constituent himself and continuing to perform official functions during the pendency of the cases in which he represented the classes that included Plaintiffs.  This presented a conflict of interests, requiring Class Counsel to disclose the nature and extent of that relationship to the classes and to their individual clients, along with the risks of the representation and the reasonably available alternatives, and to obtain their consent to representing them under those circumstances.  Class Counsel apparently did not do so.

8.      It further appears that Class Counsel initially filed a Motion to Certify Classes on October 6, 2006, that included nationwide notice but later filed a renewed Motion to Certify Classes on January 17, 2007, that removed the nationwide portion of the notice and reduced notice to only South Carolina and neighboring cities despite that the same motion defined a class with no geographic boundaries and despite that Class Counsel undertook to represent several out-of-state clients as class participants, including the McDonald Plaintiffs. The only change in the notice paragraph between the October motion and the January motion, beyond renumbering the exhibits, was the deletion of the words "USA Today," which was the only nationwide publication proposed in the October 2006 motion. Thus Class Counsel appear to have taken affirmative steps to exclude from class notice nearly the entire country outside of South Carolina despite identifying and ultimately obtaining certification of a class defined without a geographical boundary, thereby excluding from notice those putative class members, like Plaintiffs, who lived elsewhere.



9.       Statements by Defendant Richter at the July 13, 2007, hearing indicated that any class members who did not receive notice (a group that included Plaintiffs) would be entitled to bring claims after the claims period and that the Diocese would waive all defenses to such later claims. Other discussions at that hearing involved the same waiver and late-claim entitlement issues specifically with respect to several individual class members who had contacted the Diocese previously regarding allegations of abuse. The July 30, 2007, order preserves the late-claim rights of (i.e., requires the Diocese to waive defenses as to) only those individuals that had previously contacted the Diocese, not of other class members who were entitled to notice but did not receive it, such as Plaintiffs. In a June 15, 2011, order Judge Harrington ruled that the July 13, 2007, hearing colloquy and the July 30, 2007, order referred only to the individuals who had previously come forward with abuse claims but not received actual notice, and not to the broader group of class members, like Plaintiffs, who lived outside the area of notice by publication. Regardless of whether Defendants intended at the July 13 hearing to address this broader group or only the individuals who had come forward already, Class Counsel failed to protect the interests of the broader group of putative class members outside the notice zone, of which Plaintiffs are members. Class Counsel did so either by not attempting to address their rights at the hearing or by addressing them at the hearing but making no effort to secure their rights in a final order, despite that they were within the putative classes as defined by Class Counsel in the pleadings and motions. Thus, as Class Counsel appears to have admitted in the April 12, 2013 hearing, they protected the interests of a few of the unnamed members of the putative classes but sacrificed the interests of others, including Plaintiffs, either by including them in the classes but failing to provide notice to them or by excluding them from the classes and thus from the substantial benefits provided to the



ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

classes through the Diocese's waiver of all defenses (such as charitable immunity and the Statute of Limitations).

10.    It further appears that Class Counsel's conduct fell below the standard of care by failing to seek a post-claims fairness hearing or to provide any procedure in the settlement agreement for post-claim review, and further sacrificing the opportunity of clients and other class members to obtain a post-claim review. Class Counsel did so by providing in the settlement agreement that the arbitrator shall have sole discretion in awards, not subject to objection, review, appeal, or suit and that, by participating in the claims process, claimants expressly waive the right to appeal.

11.    It further appears that Class Counsel engaged in an impermissible conflict of interests and breached their duty to the classes as a whole by settling the claims of the class representatives prior to, and regardless of, class certification and court approval of the class settlement, not subjecting the class representatives to the claim scrutiny and damages matrix that applied to all other class members such as Plaintiffs.

12.    Finally, it appears that Class Counsel charged or attempted to charge the McDonald Plaintiffs and other class members a fee of 20% of their individual recoveries of class settlement funds without informing them that Class Counsel has already been paid a $2,500,000.00 fee for their work and that the additional 20% fees were not approved by the court.

13.    As a result, it is my opinion that Class Counsel's conduct as alleged in the above-captioned Complaint and shown in the above-listed documents fell below the degree of skill, knowledge, and judgment usually possessed and exercised by members of the legal profession in South Carolina, and that they breached duties of competence, diligence, communication, and loyalty to Plaintiffs.

ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

14.    The opinions in this affidavit are given to a reasonable degree of certainty and are specifically based on the evidence listed above.  I reserve the right to alter, amend, modify, reduce, or expand these opinions if and when additional information is presented.


Further affiant sayeth naught.


_____
Michael J. Virzi

State of South Carolina
County of Richland

Sworn and subscribed before me
This 9th day of September , 2020

Natasha Brenchor
_____
          Notary Public

My Commission Expires : 10/18/2026



ELECTRONICALLY FILED - 2022 Aug 30 5:45 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004031

Look for: yellow background on the front of this check, and the imageSafe® logo on back. If not present, do not cash.

**DIOCESE OF CHARLESTON**
FINANCE OFFICE
1662 INGRAM RD.
CHARLESTON, SC 29407

42983

67-448/539 SC
2961

DATE 11-20-06

PAY TO THE ORDER OF Richter & Haller LLC - Client Trust Account $ 345,000.—

DIOCESE OF CHARLESTON 345,000 00 CTS DOLLARS

Security features are included. Details on back.

Bank of America

FOR

⑈042983⑈ [redacted] [redacted]

©Clarke American BA
GUARDIAN ® SAFETY

---

Look for: yellow background on the front of this check, and the imageSafe® logo on back. If not present, do not cash.

**DIOCESE OF CHARLESTON**
FINANCE OFFICE
1662 INGRAM RD.
CHARLESTON, SC 29407

42982

67-448/539 SC
2961

DATE 11-20-06

PAY TO THE ORDER OF Richter & Haller, LLC $ 145,000.—

DIOCESE OF CHARLESTON 145,000 00 CTS DOLLARS

Security features are included. Details on back.

Bank of America

FOR

⑈042982⑈ [redacted] [redacted]

©Clarke American BA
GUARDIAN ® SAFETY